## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CENTAURI SPECIALTY INSURANCE
COMPANY AS SUBROGEE OF                                    CIVIL ACTION
LINDA THOMPSON


VERSUS                                                    16-226-SDD-RLB


GENERAL MOTORS, LLC


### RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by

Defendant General Motors, LLC ("Defendant" or "GM").   Plaintiff Centauri Specialty

Insurance Company ("Plaintiff" or "Centauri"), as subrogee of Linda Thompson,

("Thompson") has filed an *Opposition,*[2] to which Defendant filed a *Reply*.[3]   For the

following reasons, the Court finds that Defendant's motion should be granted.

I.      **FACTUAL & PROCEDURAL BACKGROUND**

On March 27, 2015, at approximately 12:20 a.m., Thompson arrived at her home

and parked her 2008 Chevrolet Cobalt under her carport.   While preparing for bed,

Thompson heard a loud popping noise.   When she looked out of the window, Thompson

saw flames coming from underneath the hood of the Cobalt.   The Cobalt's engine was

not running when the fire broke out.   A Ford truck parked next to the Cobalt was not

initially consumed by the flames.   Thompson called 911, but the fire spread to Thompson's

---

[1] Rec. Doc. No. 11.
[2] Rec. Doc. No. 14.
[3] Rec. Doc. No. 16.
37376

property before the firefighters could extinguish it, causing approximately $150,000 in damages.

Lieutenant Eric Johnson from the Office of the State Fire Marshal reported to the scene to investigate several hours after the fire had been extinguished.  Lt. Johnson reported that Thompson observed the fire come "from what appeared to be the engine compartment" of the Cobalt.[4]  The initial fire report also indicated that the cause of the fire was undetermined.  At the time of the fire's outbreak, Centauri provided the homeowner's insurance on Thompson's property.  Thus, Centauri was subrogated to Thompson's claim for the property damage sustained by the fire.

Centauri filed suit in state court against GM, the manufacturer of the 2008 Cobalt, pursuant to the Louisiana Products Liability Act ("LPLA") and alleges that the vehicle manufactured by the Defendant is unreasonably dangerous in:   (1) design, (2) construction or composition, (3) because an adequate warning was not provided, and (4) because the product failed to conform to an express warranty.  The case was removed to this Court, and the Scheduling Order required that Plaintiff provide its expert report by September 30, 2016, Defendant to provide its expert report by October 31, 2016, and expert discovery to be completed by December 30, 2016.[5]

Plaintiff provided a report from Roy Adcox and Joseph Ellington dated April 9, 2015, less than a month after the fire occurred.[6]  In its response to GM's First Set for Production of Documents, Plaintiff stated that, regarding its claim that the 2008 Cobalt is

---

[4] Rec. Doc. No. 14-3, p. 2.
[5] See Rec. Doc. No. 9.
[6] See Rec. Doc. 14, Exhibit 4.

37376

defective, Plaintiff would disclose any and all experts and their opinions prior to trial.[7]  To date, Plaintiff has not produced any further expert reports. Defendant has presented a final report from its expert.[8]

Defendant now moves for summary judgment arguing that Plaintiff has failed to establish any genuine issues of material fact as to any of its LPLA claims.  Plaintiff opposes this motion.

## II.    PARTIES' ARGUMNETS

Defendant moves for summary judgment on all of Plaintiff's claims, arguing that Centauri has failed to present summary judgment evidence to create material issues of fact on every theory of liability.  Defendant primarily contends that Plaintiff's absence of expert testimony establishing an alleged defect in the vehicle or the probable cause of the fire forecloses its claims as a matter of law.  Defendant avers that this is precisely the type of case in which expert testimony is required to survive summary judgment.

Defendant emphasizes that the expert report offered by Plaintiff fails to identify specific defects in the 2008 Chevrolet Cobalt, fails to state whether any alleged defect is related to the design or manufacture of the vehicle, lacks engineering expertise, does not provide scientific testing or methodology, and fails to determine a probable cause of the fire.  Defendant maintains that Plaintiff is required under the LPLA to establish that an unreasonably dangerous condition existed at the time the vehicle left Defendant's control; however, Plaintiff's experts admit they lack sufficient background information relating to the vehicle to determine the source of the fire.[9]  Defendant argues that this admission

---

[7] *See* Rec. Doc. 11, Exhibit 1.
[8] *See* Rec. Doc. 14, Exhibit 5.
[9] Rec. Doc. No. 1-3, p. 5.
37376

renders summary judgment appropriate in its favor as it establishes that Plaintiff cannot carry its burden of proving causation.

Defendant cites the Louisiana Supreme Court decision in *Reynolds v. Bordelon*[10] in support of its motion.  *Reynolds* involved a products liability claim against a vehicle manufacturer after a motorist was injured in a collision with another vehicle.  The plaintiff suffered injuries after her vehicle's air bag failed to deploy following the collision.  The *Reynolds* court affirmed the grant of summary judgment in favor of the manufacturer because the plaintiff's expert failed to provide an alternative design for the alleged defect in the vehicle and also failed to address other allegations of an air bag defect.

Defendant contends Plaintiff's construction/composition claim fails since it has presented no evidence to show the manufacturer's specifications or performance standards for this vehicle, or how the vehicle materially deviated from those standards so as to render it unreasonably dangerous.  As to design, not only has Plaintiff failed to identify a specific design defect, but it has also failed to even mention an alternative design.  Plaintiff also ignores the inadequacy of any alleged warning, does not provide an alternate warning, and fails to discuss or present any evidence that any express warranty is untrue.

In opposition to Defendant's motion, Plaintiff primarily relies on the doctrine of *res ipsa loquitur*, and Plaintiff maintains that it may present circumstantial evidence to infer that a defect existed at the time the subject vehicle left the Defendant's control.  Plaintiff avers that, "[w]ell maintained vehicles, even older models, do not usually catch on fire."[11]

---

[10] 2014-2371 (La. 6/30/15); 172 So.3d 607.
[11] Rec. Doc. No. 14, p. 4.

37376

Plaintiff contends it has presented evidence establishing that the fire originated in the engine compartment of the vehicle, and no evidence exists suggestive of arson or third-party fault.  Plaintiff claims that Thompson regularly maintained the vehicle, and the vehicle has never had any problems or repair work under the hood.  Plaintiff highlights the State Fire Marshal report which contradicts Defendant's expert's opinion that the fire started because of an unknown ignition of gasoline found at the scene.  Plaintiff contends that, because it has presented evidence to exclude other reasonable hypotheses with a fair amount of certainty, *res ipsa loquitur* applies in this case and summary judgment is inappropriate.

Defendant responds that Plaintiff ignores evidence in the record which defeats the application of *res ipsa loquitur*:  Plaintiff's own experts could not rule out third party involvement in the fire based on lack of information regarding the maintenance history of the vehicle, and these experts also concluded that the cause of the failure of the vehicle was not conclusively identified.  Defendant contends the findings of Plaintiff's experts nullify the application of *res ipsa loquitur* in this case.  Further, Defendant argues that Plaintiff ignores any reference to its burden of proof under the LPLA and the jurisprudential requirement for expert testimony in a case such as this.

III.    **LAW AND ANLYSIS**

   **A. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

37376

of law."[12]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[13]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[14]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[15]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[16]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[17]  All reasonable factual inferences are drawn in favor of the nonmoving party.[18]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[19]  "Conclusory allegations unsupported by specific

---

[12] Fed. R. Civ. P. 56(a).

[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[14] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[15] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[16] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[17] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[18] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[19] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

37376

facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[20]

### B.  The LPLA[21]

Because subject matter jurisdiction in this case is based on diversity of citizenship, the substantive law of Louisiana governs this dispute.[22] The LPLA establishes the exclusive theory of liability for manufacturers regarding damages caused by their products.  The applicable standard under the LPLA is as follows:  "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."[23]  Thus, to maintain a successful claim under the LPLA, a claimant must establish four elements:  (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[24]

There appears to be no dispute that the Defendant is the manufacturer of the vehicle, or that the vehicle was within the reasonably anticipated use of the product

---

[20] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[21] La. R.S. 9:2800.51, *et seq.*

[22] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[23] La. R.S. 9:2800.54(A).

[24] *Ayo v. Triplex, Inc.*, 457 F. App'x 382, 385-86 (5th Cir. 2012)(citing *Jack v. Alberto–Culver USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007) (citing La. R.S. 9:2800.54(A))(internal quotation marks omitted).

37376

(parked) at the time of the fire.  The disputes herein focus on whether the vehicle was unreasonably dangerous in some way at the time it left the manufacturer's control, and, if so, whether this dangerous condition proximately caused the fire.

A product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty.[25]  The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated modification or alteration of the product.[26]  Louisiana law does not permit a factfinder "to presume an unreasonably dangerous condition solely from the fact that injury occurred."[27] Rather, the claimant has the burden of proving the required elements under the LPLA.[28]

Although Plaintiff alleges that the Defendant's product is unreasonably dangerous in all four manners provided by law, Plaintiff's argument focuses solely on the availability of the *res ipsa loquitur* doctrine which, under certain circumstances, may be used in a products liability action to establish an inference that a product was unreasonably dangerous when that product left a manufacturer's control.[29]  This inquiry is relevant to a construction/composition claim.  Plaintiff offers no argument or jurisprudence regarding the other three claims of design, inadequate warning, or breach of express warranty.

    1.  <u>*Res Ipsa Loquitur*</u>

Ordinarily, to maintain a construction or composition defect claim under the LPLA,

---

[25] La. R.S. § 9:2800.54(B).

[26] *Id.* § 2800.54(C).

[27] *Woodling v. Hubbell Inc.,* 35 F. App'x 386, *4 (5th Cir. 2002)(citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (quoting *McCarthy v. Danek Med., Inc.*, 65 F.Supp.2d 410, 412 (E.D.La.1999)).

[28] La. R.S. 9:2800.54(D).

[29] *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, No. 2005-CC-0257 (La. 9/6/06); 938 So.2d 35, 49.

37376

the plaintiff bears the burden of proving that at the time the product left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product, or from identical products manufactured by the same manufacturer.[30]   However, the Louisiana Supreme Court has explained that the evidentiary doctrine of *res ipsa loquitur* may be used in a products liability action to establish an inference that a product was unreasonably dangerous when that product left a manufacturer's control.[31]   In *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, the Louisiana Supreme Court stated that:

> This inference merely shifts the burden of proof to the defendant-manufacturer, such that the manufacturer must prove that the product was not defective when it left the manufacturer's control. The defective nature of a product will not be "presumed" by utilizing this doctrine, but rather, "[i]t simply gives the plaintiff the right to place on the scales, 'along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of [the unreasonably dangerous nature of a product]' sufficient to shift the burden of proof."[32]

To invoke the doctrine of *res ipsa loquitur*, a plaintiff must demonstrate the following three criteria: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff.[33]

As to the second criteria, a plaintiff need not negate all possible causes, but must

---

[30] La. R.S. 9:2800.55.
[31] *Lawson*, 938 So.2d at 49.
[32] *Id.*
[33] *Id.* at 50; *see also Linnear v. Centerpoint Energy*, 2006–3030, p. 6–7 (La.09/05/07); 966 So.2d 36 at 44.
37376

present evidence that "excludes other reasonable hypotheses with a fair amount of certainty."[34]   Thus, a plaintiff's evidence is sufficient when "the only reasonable and fair conclusion is that the accident resulted from a breach of duty or omission on the part of the defendant."[35]   A plaintiff must not only exclude inference of his/her own responsibility, but also "the responsibility of others besides defendant."[36]   If a plaintiff meets his/her burden with respect to the three criteria enumerated above, the burden shifts to the defendant manufacturer to prove that the product was not defective when it left the manufacturer's control.[37]

The Court finds that Plaintiff has not satisfied her burden of maintaining application of *res ipsa loquitur* in this case because the record evidence does not sufficiently eliminate other plausible causes of the fire.  While Plaintiff focuses on the portion of the Fire Marshal Report which indicates that the "area of origin was determined to be at or near the engine compartment of the loss," it ignores the following finding:  "The cause of the fire is being classified as 'undetermined' **with the inability to rule out accidental causes**."[38] Moreover, Plaintiff's own experts opined:  "Without knowing the full maintenance or repair history of the vehicle, we cannot address the possible relationship with respect to any work performed on the vehicle and the source of the fire's ignition."[39]   The record shows that Thompson purchased the vehicle in 2008 with 124 miles on it,[40] and, although Thompson never had any problems with the Cobalt, she testified that at one point, she

---

[34] *State Farm Mut. Auto. Ins. Co. v. Wrap–On Co., Inc.*, 626 So.2d 874, 877 (La.App. 3 Cir.1993).
[35] *Jurls v. Ford Motor Co.*, 2000–32,125, p. 8 (La.App. 2 Cir. 1/6/00); 752 So.2d 260, 265.
[36] *Lawson*, 938 So.2d at 50; *see also Ayala v. Enerco Grp., Inc.*, 569 Fed. Appx. 241, 249 (5th Cir. 2014) (unpublished).
[37] *Id.* at 49.
[38] Rec. Doc. No. 14-3, p. 3 (emphasis added).
[39] Rec. Doc. No. 14-5, p. 7.
[40] Rec. Doc. No. 14, Exhibit 1, p. 23, 26.
37376

had to have "something changed out on it."[41]   Thompson also testified that, prior to the fire, she had replaced the light bulb within the inner fuse box but had never had repairs conducted underneath the inner fuse box.[42]   Thompson's deposition testimony that she regularly maintained the vehicle and did not know of any wiring, overheating, or electrical problems does not negate "to a reasonable certainty"  the possibility of third party fault or some intervening cause in a seven year old vehicle.

Defendant's expert concluded that:  "The burn patterns on 2008 Cobalt showed significantly more burn damage to the right side of the vehicle as compared to the left side … which contradicts plaintiff's expert conclusion that the fire originated on the left side of the engine compartment."[43]   Defendant's expert further opined:  "The remains of the 2008 Cobalt engine compartment fuse block shows no evidence of electrical activity which contradicts plaintiff's expert conclusion that the ignition source of the fire was the failure of the 2008 Cobalt fuse block assembly."[44]   Although Plaintiff's expert report reaches a different conclusion regarding where the fire originated, the report did not establish any facts to support the conclusion that the fuse block assembly failed, and the experts did not follow up with a final report.  Without identifying a potential defect, there is no genuine issue of material fact regarding Plaintiff's claim that GM's product was unreasonably dangerous - an essential component of Plaintiff's claim.  Plaintiff's expert report also fails to challenge or counter the Defendant's expert's equally plausible and supported conclusions as to the fire's origin and source.

---

[41] *Id.* at pp. 24-25, 28-29.
[42] *Id.*, at p. 32.
[43] Rec. Doc. No. 14-6, p. 6.
[44] *Id.* at p. 7.

37376

Further, while Plaintiff's expert provides an alternative theory of the origin of the fire, he fails to find the source of ignition, and thus fails to exclude potential possibilities other than a defect. The Court agrees that Plaintiff need not rule out every possible theory of causation; however,

> plausible, well-developed theories absolving a defendant of liability must be addressed or alternative theories proposed. For to do otherwise is to ignore the elephant in the living room and grant recovery for simply experiencing a strange accident. This is not the purpose of *res ipsa loquitur*. That doctrine is a vehicle by which negligence may be inferred, not a sword that blindly carves out a recovery."[45]

This is simply not a case that falls under the narrowly and sparingly applied doctrine of *res ipsa loquitur*. While Plaintiff need not exclude all possible causes to invoke *res ipsa*, "the plausibility of multiple alternative causes stands as a barrier to the doctrine's invocation."[46] Thus, summary judgment is granted to Defendants on the claim of *res ipsa loquitur*.

Louisiana federal and state jurisprudence provides support for the Court's findings. In *Desoto v. Ford Motor Company*,[47] owners of a pickup truck which caught fire sued the truck manufacturer claiming the fire was the result of a manufacturing defect. The plaintiffs' 2000 Ford F150 pickup truck caught fire during the early morning hours while they were sleeping in their mobile home. The fire made contact with and spread to the mobile home.[48] At trial, Desoto testified that he had performed routine maintenance on the truck but no major repairs, and he lacked knowledge of any repairs made by the

---

[45] *Edwards v. Ford Motor Co.*, 2006-101 (La. App. 3 Cir. 6/21/06), 934 So.2d 221, 223-24.
[46] *Atlantic Specialty Insurance Company v. Porter, Inc.*, No. 15-570, 2016 WL 6833082, *10 (Nov. 21, 2016).
[47] 2007-1097 (La. App. 3 Cir. 1/30/08); 975 So.2d 195.
[48] *Id.* at 197.
37376

previous owner.[49]   Ultimately, the trial court entered judgment in favor of the plaintiffs invoking the doctrine of *res ipsa loquitur*.[50]

Ford appealed, and the Court of Appeal for the Third Circuit of Louisiana reversed the trial court's judgment, finding that the trial court erroneously applied *res ipsa loquitur*. The court held that, "for *res ipsa loquitor* to be applicable herein, the Desotos had to establish by a preponderance of the evidence that the fire was not caused by them or a third party."[51]   The trial court had determined that there was no evidence of vandalism, thus implying that it was Ford's burden to prove that the fire was caused by vandalism. The appellate court found this erroneous, stating that "it was the Desotos' burden to exclude all other reasonable explanations for the fire."[52]

In *Rabun v. General Motors*, the court recognized that the circumstances surrounding the plaintiff's injuries were unusual where, four months after a car accident in her Tahoe vehicle, Rabun was injured when the liftgate on her Tahoe failed.[53]   After that incident, but before Rabun filed suit, the retailer had replaced the liftgate struts.[54] The court ultimately found that, although the circumstances surrounding the failure were unusual and could lead to an inference of negligence, the plaintiff could not exclude the possibility that there were other causes of the liftgate failure.[55]   Further, the *Rabun c*ourt found that the plaintiff's expert testimony was insufficient to support her claim because the expert could not identify a specific defect that caused the liftgate's failure.[56]

---

[49] *Id.*
[50] *Id.*
[51] *Id.* at 199, citing *Lawson*, 938 So.2d 35.
[52] *Id.*, citing *Lawson*, 938 So.2d 35.
[53] *Rabun v. General Motors, LLC.* No. CIV.A. 12-2482, 2013 WL 4506186, at *1 (W.D. La. Aug. 22, 2013).
[54] *Id.*
[55] *Id.* at *4.
[56] *Id.*

37376

The decision in *Riley v. Stihl*[57] is also instructive.  In *Riley*, the decedent's children brought a wrongful death and survival action after their father died from injuries suffered in a fire that ignited while he operated a chain saw manufactured by the defendant.  The plaintiffs argued that *res ipsa loquitur* applied to defeat the defendant's motion for summary judgment under the LPLA.[58]   The court rejected this argument and held as follows:

> The plaintiffs have failed to show that Lee's injuries are of the type that would not have occurred but for the defendants' negligence in producing a defective product. The application of *res ipsa loquitur* is generally limited to situations in which the cause of the harm is so apparent based on ordinary experience and common usage that it is reasonable to conclude that "such causes do not commonly occur in the absence of negligence." *White v. McCool*, 395 So.2d 774, 777 (La.1981). When the particular cause of harm is not so apparent, however, the plaintiff "must put forth expert testimony to show that the harm could only have been caused by the negligence of the defendant." *Brown*, 231 F.3d at 201. The plaintiffs here have failed to put forth such evidence.[59]

The court also found that the plaintiffs failed to eliminate other possible causes of the fire that injured their father.  The court noted:

> While the plaintiffs allege that a defect in the chain saw's gas cap caused the fire that injured Lee, they have presented no evidence of what the specific defect was or even that it existed at all. Instead, the plaintiffs have highlighted portions of witnesses' depositions that suggest only that Lee was an experienced logger. Without evidence of any defect, the plaintiffs have not dispelled, to the extent necessary to overcome a motion for summary judgment, the possibility that Lee either improperly placed the gas cap on the chain saw or failed to do so altogether. In addition, even if the gas cap were defective, the plaintiffs have produced no evidence to show, as required for claims pursuant to the LPLA, that any such defect existed at the time the chain saw left the manufacturer's control. Although the plaintiffs insist that the gas cap's defect caused the fire that injured Lee, it is equally as plausible, after reviewing the plaintiffs' scant evidence and evidence presented by the defendants, that Lee's own error or some post-

---

[57] No. 04-1734, 2005 WL 2304464 (Aug. 22, 2005).
[58] *Id.* at *3.
[59] *Id.*
37376

manufacturing defect or damage to the chain saw caused the fire.[60]

The facts in the present case dictate the same result.  The Court finds that Plaintiff has failed to justify application of the doctrine of *res ipsa loquitur*.

### 2.  Failure to Identify a Defect

Having failed to provide a sufficient basis to apply *res ipsa loquitur*, Plaintiff is required to identify a specific defect in the Cobalt to carry its summary judgment burden on all of its LPLA claims.  Plaintiff has failed to carry this burden as Plaintiff's experts did not provide any basis for the conclusion that the source of the failure involved the fuse block assembly.  Plaintiff appears to confuse the source of ignition with identification of a defect.  Plaintiff has not provided any additional expert report identifying any defect in the Cobalt.   Without identifying a potential defect, there is no genuine issue of material fact that GM's product was unreasonably dangerous, which is fatal to Plaintiff's claim.

Plaintiff also fails to provide summary judgment evidence that any alleged unreasonably dangerous characteristic existed at the time the Cobalt left the manufacturer's control or resulted from a reasonably anticipated alteration or modification of the product.[61]  At the time of the fire, the Cobalt had been out of the manufacturer's control for at least seven years and had undergone several years of routine maintenance. Plaintiff has failed to provide summary judgment evidence that the Cobalt was in "substantially the same condition as it was when it left its manufacturer's control and that there were no alterations or modifications" to the Cobalt.[62]  Conclusory and speculative

---

[60] *Id.* at *4.
[61] La Rev. Stat. § 9:2800.54.
[62] *Reynolds*, 172 So.3d at 615.  *See also Allstate Ins.Co. v. Pooltime Products, Inc.*, 846 F.Supp. 499 (E.D. La. 1994)("Allstate has failed to advance any facts showing that the product was defective, much less that it was defective when it left the manufacturer's control.  Furthermore, Plaintiff has not offered any expert

37376

allegations are insufficient to defeat summary judgment on this issue.

This Court's decision in *Underwood v. General Motors, LLC*[63] is applicable to the present case.  In *Underwood*, plaintiff sued GM claiming that a 2006 Saturn VUE was defective under the LPLA after the vehicle allegedly caught fire prior to crashing, causing the injuries and deaths of the driver and passenger.[64]  The plaintiffs failed to comply with discovery deadlines for expert reports, and the Court held that plaintiffs lacked the required expert testimony[65] to carry their burden in such a highly technical case.[66]  The Court stated as follows:

> The Fifth Circuit has acknowledged that "there may be cases in which the judge or the jury, while relying on background knowledge and 'common sense,' can 'fill in the gaps'" such that an expert opinion would be unnecessary. *See Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 591 (5th Cir.1994) (*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 184 (5th Cir.1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)). This is not such a case.  Whether or not a fuel tank or an automobile electrical system was defective, or was the proximate cause of driver or passenger injury, is not part of the everyday experience of the average finder of fact. A juror would need expert testimony to evaluate these issues concerning highly technical aspects of automobile engineering. *See Caboni v. Gen. Motors Corp.*, 398 F.3d 357, 361 (5th Cir.2005); *Battistella v. Daimler Chrysler Motors, Co., LLC,* No. CIV.A. 03–2286, 2004 WL 1336444. at *2 (E.D.La. June 14, 2004). George Joseph, Jr.'s affidavit, though it may not have formed the basis for the conclusions drawn by Defendant's experts, does not constitute competent, legally sufficient evidence permitting Plaintiffs' claims to withstand a summary judgment motion. Plaintiffs' failure to timely designate an expert is fatal to their LPLA claims.[67]

The Court also noted that, even if expert testimony was not required in such a

---

testimony that the product in question was defective and the deadline for exchange of expert reports has passed.").

[63] No. 14-0188-BAJ-RLB, 2015 WL 5475610 (M.D. La. Sep. 16, 2015).

[64] *Id.* at *1.

[65] *Id.* at *2.

[66] *Id.* at *3.

[67] *Id.*

37376

case, plaintiffs failed to establish that the alleged defect in the fuel tank or electrical system existed at the time the 2006 Saturn VUE left the manufacturer's control.   The Court concluded:

> The Saturn VUE in this matter was six years old at the time of the car collision. In their petition, Plaintiffs alleged in a conclusory fashion that the unreasonably dangerous characteristics of the car existed when the product left the manufacturer's control. (See Doc. 1–1 at ¶ 10). In response to Defendant's summary judgment motion, however, Plaintiffs have failed to produce evidence demonstrating that they could carry their burden on this required element. There is no competent evidence in the record tending to show that any defect alleged to have caused Plaintiffs' injuries on April 7, 2012 existed when the car left Defendant's control in 2006.[68]

Applying the reasoning and analysis employed by the *Underwood* court, the same conclusion must be reached in this case.   Plaintiff has failed to identify an unreasonably dangerous characteristic of GM's product; Plaintiff has also failed to present evidence that this unreasonably dangerous characteristic existed when the Cobalt left the GM's control or resulted from a reasonably anticipated alteration or modification of the product. As in *Underwood*, the Court finds that this is a case which would require expert testimony to carry Plaintiff's burden on the existence of a defect and causation.   It is undisputed that such evidence is lacking in this case.

---

[68] *Id.* at *4.

37376

IV.     CONCLUSION

For the reasons set forth above, General Motor's *Motion for Summary Judgment*[69]

is GRANTED.     *Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 15, 2017</u>.


_Shelly D. Dick_

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[69] Rec. Doc. No. 11.
37376